JOHN A. GABELMAN AND CYNDI GABELMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Gabelman v. Commissioner
Docket Nos. 25195-91, 25325-91, 25332-91
United States Tax Court
T.C. Memo 1993-592; 1993 Tax Ct. Memo LEXIS 608; 66 T.C.M. (CCH) 1581; December 15, 1993, Filed *608 Decision will be entered under Rule 155. For petitioners: Jerry O. Allen and Gordon F. Litt. For respondent: Terry Serena. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the calendar years 1986, 1987, and 1988 in the amounts as follows: [2]
Additions to Tax Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)(1)(A)
6653
6654(a)
(1)(B)
(a)(1)
1986
$ 81,422.75
$ 2,932.18
$ 4,071.14
[1]
1987
38,164.61
1988
33,830.34
2,550.33
$ 1,691.52
$ 483.48
*609 The issues for decision are: (1) Whether respondent was required to raise as an affirmative defense the statute of limitations on refunds in order to be considered as not having waived the provisions of section 6512(b)(3) and, if so, has she failed to raise such defense; and (2) whether the remittance of $ 47,500 made in 1987 by petitioners accompanying a request for an extension of time to file their 1986 Federal income tax return, was a payment of tax for the year 1986 or a deposit, and whether the remittances made by petitioners for the taxable years 1986 and 1988 by withholding from their wages are payments of tax or deposits. [3]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Columbus, Ohio, at the time of the filing of their petitions in these cases. In the early 1970s, *610 Mr. Gabelman graduated from Ohio State University with a degree in economics and, thereafter, passed the examination for certified public accountant. He was licensed as a certified public accountant but did not engage in practice as an accountant during the periods here involved. During the 1986 taxable year, $ 22,194 and $ 390 were withheld from the wages or other income of Mr. Gabelman and Mrs. Gabelman, respectively. On or about April 14, 1987, petitioners submitted a Form 4868 (Application for Automatic Extension of Time to File U.S. Individual Income Tax Return) for the 1986 taxable year (the 1986 Form 4868) with a remittance of $ 47,500 in the form of a check drawn by Mr. Gabelman. The 1986 Form 4868 contained the following information concerning petitioners' estimated tax liability: Total income tax liability for 1986
$ 70,085
Federal income tax withheld
22,585
Income tax balance due
47,500
On or about August 14, 1987, petitioners filed Form 2688 (Application for Additional Extension of Time To File) for the 1986 taxable year requesting an additional 2-month extension of time within which to file a return for 1986. Respondent granted the requested extension. *611 No additional amounts were remitted by petitioners with their submission of the Form 2688. On August 2, 1991, respondent mailed a notice of deficiency to petitioner John A. Gabelman with respect to his tax liability for the year 1986. In the notice of deficiency for the year 1986 respondent determined the tax liability of Mr. Gabelman for 1986 to be $ 81,422.75, and showed the amount of $ 69,694 as "adjustments to prepayment credits; other prepayment credits", with a balance due of $ 11,728.75. Petitioners have not filed a Federal income tax return for 1986 nor have they filed a claim for refund of tax for that year. During the 1987 taxable year, $ 25,020 was withheld from the wages or other income of Mr. Gabelman. On or about April 15, 1988, petitioners submitted a Form 4868 (Application for Automatic Extension of Time to File U.S. Individual Income Tax Return) for the 1987 taxable year (the 1987 Form 4868), along with a check drawn by Mr. Gabelman payable to the Internal Revenue Service for $ 18,000. The 1987 Form 4868 contained the following information concerning petitioners' estimated tax liability: Total income tax liability for 1987
$ 43,020
Federal income tax withheld
25,020
Income tax balance due
18,000
*612 On or about April 24, 1991, petitioners filed their Federal income tax return for the taxable year 1987. On August 2, 1991, respondent mailed a notice of deficiency to petitioners for the taxable year 1987. During the 1988 taxable year, $ 23,630 and $ 77 were withheld from the wages or other income of Mr. Gabelman and Mrs. Gabelman, respectively. On or about April 17, 1989, petitioners submitted a Form 4868 (Application for Automatic Extension of Time to File U.S. Individual Income Tax Return) for the 1988 taxable year (the 1988 Form 4868). No remittance was made with the submission of the 1988 Form 4868. The 1988 Form 4868 contained the following information concerning petitioners' estimated tax liability: Total income tax liability for 1988
$ 16,000
Federal income tax withheld
23,310
Income tax balance due
-0-  On or about August 15, 1989, petitioners filed Form 2688 (Application for Additional Extension of Time To File) for the 1988 taxable year requesting an extension of time to file their income tax return until September 30, 1989, which requested extension was granted. No amount was remitted by petitioners along with their submission of the Form 2688. On *613 August 6, 1991, respondent mailed a notice of deficiency to petitioner John A. Gabelman for the taxable year 1988. Petitioners never filed a Federal income tax return for 1988 nor have they filed a claim for refund of income tax for the year 1988. It has been Mr. Gabelman's practice, going back as far as 1972, to file requests for extensions of time to file his Federal income tax returns. Usually Mr. Gabelman would send a remittance with each of these requests. To calculate the amount to be remitted with each extension request, Mr. Gabelman would prepare a worksheet that listed all the items of taxable income and all deductions of which he had knowledge. In making such a list, Mr. Gabelman would consult Forms W-2, Forms 1099, and brokerage statements that were available to him. During each year, Mr. Gabelman kept a record of deductions, which was used in calculating the amount to be remitted. The amounts on the worksheet would then be compared to amounts on the prior year's tax return or worksheet in order to determine items that might be missing. Any items that were determined to be missing would be added to the worksheet. If Mr. Gabelman was unable to ascertain the exact *614 amount of the item, he would take the amount on the prior worksheet and increase it if it was income and decrease it if it was a deduction. If Mr. Gabelman determined that stock had been sold during the year and he was unable to determine his basis in the stock, a zero basis would be used and the entire gross receipts would be included in income. Mr. Gabelman would then total the items and compute the amount of tax that would be payable on that income. The amounts that had been withheld from petitioners' income would be subtracted from the amount of the tax as computed. The balance would be the amount of the remittance. At the time Mr. Gabelman requested extensions and made remittances he had not received all the necessary information to calculate his income tax liability with complete accuracy. On October 30, 1991, Mr. Gabelman's counsel sent a letter to respondent stating in part as follows: The above-referenced taxpayer has made undesignated remittances to the Internal Revenue Service ("IRS") in the total amount of $ 69,694 for income taxes for the year ending December 31, 1986. This amount consists of $ 22,194 remitted through withholding and $ 47,500 remitted by check. *615 Pursuant to Revenue Procedure 84-58, undesignated remittances constitute deposits in the nature of a cash bond. In a Notice of Deficiency dated August 2, 1991, the IRS asserted a deficiency in income tax for the above-referenced taxpayer for the tax year ended December 31, 1986. Pursuant to Revenue Procedure 84-58, in order for the above-referenced remittances to continue to be treated as deposits in the nature of a cash bond, the taxpayer must direct the IRS in writing to continue to treat such remittances as deposits in the nature of a cash bond within 90 days from the date of the Notice of Deficiency. Pursuant to Revenue Procedure 84-58, the taxpayer hereby directs that the remittances totalling $ 69,694, which the petitioner has made in respect of the 1986 tax year be continued to be treated as deposits in the nature of a cash bond.
On October 30, 1991, Mr. Gabelman's counsel sent an identical letter, except for the amounts of remittances, with respect to the year 1987. A similar letter was sent on November 1, 1991, with respect to the amounts withheld from petitioners' income in 1988. *616 The deficiencies in petitioners' income taxes to be assessed are $ 23,790, $ 38,164, and $ 16,778 for the taxable years 1986, 1987, and 1988, respectively, based on a joint filing status. [4] Petitioners are not liable for any additions to tax. The total amounts remitted for the years 1986, 1987, and 1988 are $ 70,084, [5] $ 43,020, and $ 23,707, respectively. OPINION Petitioners at the trial objected to the relevancy of the stipulated facts with respect to their having filed no Federal income tax returns for the years 1986 and 1988 and having filed no claims for refund for these years. The basis of the objection is that these facts relate solely to the affirmative defense of the statute of limitations which respondent failed to properly plead as required by *617 Rule 39. Petitioners contend that respondent's argument under section 6512(b) is a statute of limitations argument which is an affirmative defense. Respondent contends that section 6512(b) deals with this Court's jurisdiction to determine an overpayment. Clearly section 6512(b)(1) grants this Court jurisdiction to determine the amount of an overpayment of tax. Estate of Baumgardner v. Commissioner, 85 T.C. 445, 449 (1985). However, section 6512(b)(3) provides for a limit on the amount of credit or refund that may be made. [6]
*618 The limit on the amount that may be credited or refunded under section 6512(b)(3) is: (1) The amount paid after the notice of deficiency was mailed; (2) an amount for which a timely claim under section 6511(b)(2), (c), or (d) could have been filed, whether or not filed, at the date of the mailing of the notice of deficiency; or (3) an amount for which a timely claim under the provisions of section 6511(b)(2), (c), or (d) was filed, which claim has not been disallowed, or if disallowed, the time within which to file a suit has not expired at the time the notice of deficiency was mailed. A determination by this Court that the payment of the tax was within one of the periods specified in section 6512(b)(3) is a requirement for a refund or credit to be allowed. Here, since no payment was made after the mailing of the notice of deficiency and no returns were filed for the years 1986 and 1988, it would be necessary for this Court to find as part of its decision that the tax was paid within 2 years before the date of the mailing of the notice of deficiency, the date on which a claim is considered as filed, if no claim has previously actually been filed. Sec. 6511(b)(2). Allen v. Commissioner, 99 T.C. 475 (1992), *619 and cases therein cited. The facts here are clear that none of the amounts remitted by petitioners for the years 1986 and 1988 were remitted to respondent within the periods set forth in section 6512(b)(3). If these remittances were payments of tax, we cannot from the facts here present find that any portion was paid within the required period. Since if these remittances were payments of tax, we cannot on the facts here present make the required finding under section 6512(b)(3) to entitle petitioners to a refund or credit of their overpayment of tax, we conclude that respondent's failure to affirmatively plead a defense of the statute of limitations does not entitle petitioners to a refund or credit of their overpayment. The finding required by section 6512(b)(3) is in the nature of a jurisdictional requirement that cannot be waived. See United States v. Garbutt Oil Co., 302 U.S. 528, 533 (1938); see also Victory v. Manning, 128 F.2d 415 (3d Cir. 1942). In this regard we stated in Woody v. Commissioner, 95 T.C. 193, 204 (1990): Section 6512(b)(2) provides jurisdiction to order refunds *620 of overpayments determined by the Tax Court. Respondent argues that the statute of limitations bars claims of additional deductions resulting in an overpayment of tax for nonpartnership items, such as deductions against partnership income. The bar of the statute of limitations is not normally a jurisdictional issue. Saso v. Commissioner, 93 T.C. at 734. Our jurisdiction to determine overpayments, however, is established by a statute conditioning such relief on timeliness. Section 6512(b)(3) limits our jurisdiction to determine credits or refunds by coordinating provisions dealing with the timeliness of such claims * * *
We have also stated that "Petitioner * * * must show that the tax was paid within the periods applicable under section 6511(b)(2), (c), or (d)". Sumiel v. Commissioner, T.C. Memo. 1993-104. Certainly the above-cited cases make it clear that our discussion in Olmstead v. Commissioner, T.C. Memo. 1993-216, on which petitioners heavily rely, concerning whether respondent waived the affirmative defense of the statute of limitations, in no way changes the statutory *621 requirement that this Court find as a part of its decision that the amount was paid within the time specified in section 6512(b)(3). While in our view under the facts here present respondent is not required to affirmatively plead that no amount of the overpayment was paid within the periods specified in section 6512(b)(3), if such a requirement existed, it has substantially been met. As petitioners concede on brief, respondent spelled out her position with respect to the application of section 6512(b)(3) in her trial memorandum served on petitioners 2 weeks before this trial, and the issue had been discussed by the parties prior to that time. Comparable facts were held in Olmstead v. Commissioner, supra, to indicate no waiver by respondent of any possible affirmative defense in this regard. The remittances by petitioners in the years 1986 and 1988 were either amounts withheld from petitioners' wages or an amount remitted with the filing of a Form 4868. Sec. 6513(b)(1) provides as follows: (b) Prepaid Income Tax. -- For purposes of section 6511 or 6512 -- (1) Any tax actually deducted and withheld at the source during any calendar year *622 under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.
It is therefore clear from the statute that the amounts withheld from petitioners' wages in 1986 are considered as a payment of tax on April 15, 1987, and the amounts withheld in 1988 are considered a payment of tax on April 15, 1989. By law these withheld amounts are considered tax payments. Ehle v. United States, 720 F.2d 1096 (9th Cir. 1983). Since petitioners filed no Federal income tax return for either the year 1986 or the year 1988 and filed no claim for refund for either of these years, the amounts withheld are refundable only if paid within 2 years before the mailing of the notice of deficiency. Since the payments by way of withholding were not made within this period for either the year 1986 or 1988, none of the amounts withheld from petitioners' wages during the years 1986 and 1988 are eligible to be refunded or credited to petitioners under section 6512(b)(3). Whether the amount remitted *623 with the Form 4868 filed by petitioners for 1986 was a payment of tax or a deposit is a question of fact in this case. The crucial fact to be decided is the intent of petitioners at the time the remittance was made. Risman v. Commissioner, 100 T.C. 191, 197 (1993). Generally, a remittance by a taxpayer to respondent will not be considered a payment "until the taxpayer intends that the remittance satisfy what the taxpayer regards as an existing tax liability". Id. The Court of Appeals for the Sixth Circuit, to which an appeal in this case would lie, in Ameel v. United States, 426 F.2d 1270, 1273 (6th Cir. 1970), quoted with approval the following statement from 10 Mertens, Law of Federal Income Taxation, sec. 58.27 at 79 (1964 rev.) -- This much is clear: (1) a remittance is not per se "payment" of the tax; (2) a remittance that does not satisfy an asserted tax liability should not be treated as the "payment" of a tax; and (3) an essential factor in "payment" before assessment is the satisfaction or discharge of what the taxpayer deems a liability.
Factors, in addition to whether there has been an assessment *624 of tax, to be considered are: (1) When the tax liability is defined; (2) the taxpayer's intent in remitting the money; and (3) how the Internal Revenue Service treats the remittance upon receipt. Ewing v. United States, 914 F.2d 499, 503 (4th Cir. 1990). In Ewing v. United States, supra at 504, the Court of Appeals for the Fourth Circuit held that when there is a recognition by the taxpayer of an obligation to pay taxes and the taxpayer makes a remittance, then the remittance is a payment. Whether a taxpayer intends to have a remittance treated as a payment or a deposit is usually established by examining all the relevant facts and circumstances surrounding the remittance. Ewing v. United States, supra at 503; Ameel v. Commissioner, supra at 1273. In Risman v. Commissioner, 100 T.C. 191 (1993), we concluded that on the basis of the facts there present the taxpayer's remittance accompanying a Form 4868 was a deposit. In that case, at the time his 1981 Federal income tax return was due, the taxpayer's life was in disarray. The taxpayer filed *625 a Form 4868 requesting an extension of time for filing his tax return and remitted $ 25,000. At the time of the remittance, the taxpayer had no idea what his ultimate tax liability for the year would be, and he had made no attempt to calculate the amount of tax due. Instead, the taxpayer just arbitrarily decided to remit $ 25,000 in order to avoid penalties and interest. Upon receipt of the $ 25,000, the Internal Revenue Service (IRS) credited the amount to a non-interest-bearing suspense account in the taxpayer's name. About 14 months after the remittance was made, the taxpayer wrote the IRS stating that the $ 25,000 remittance was not based on any estimate of tax liability and the taxpayer expected the remittance to be applied to future taxes. In May 1986 the taxpayer filed a Form 4868 for the year 1985 and made a $ 10,000 remittance which he asked to be kept "as deposit toward tax due". Later, the taxpayer made further remittances which did not accompany Forms 4868 and were not designated as his payment of any particular tax liability. Later, the taxpayer claimed a refund of part of the $ 25,000. The taxpayer's eligibility for repayment of any part of the $ 25,000 depended *626 upon whether the $ 25,000 was a payment of tax or a deposit. We stated that remittances accompanying a Form 4868 "are not necessarily to be treated, as a matter of law, as payments of tax as of the filing date of the associated income tax return". Risman v. Commissioner, supra at 203. Instead, we examined the facts and circumstances to determine whether the remittance was a payment or a deposit. In Risman v. Commissioner, supra, the amount of the remittance was arbitrarily decided by the taxpayer and bore no good-faith relationship to the taxpayer's actual tax liability. In holding the remittance to be a deposit and not a payment, we stated that: a disorderly or random remittance (that is made by a taxpayer arbitrarily, without regard to an orderly, apparent, or reasonably possible ultimate tax liability, and that is made prior to any determination by respondent of the taxpayer's tax liability) will generally be regarded not as a payment of tax but as a mere deposit. [Citations omitted; emphasis added.] Id. at 198.
Section 6151(a) provides that when a return is required, *627 the person required to file such return "shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return)". A return made on the basis of the calendar year must be filed on or before the 15th day of April following the close of the calendar year. Sec. 6072. Section 6081(a) permits the Commissioner to grant to a taxpayer a reasonable extension of time, not to exceed 6 months, to file any return. Section 1.6081-4, Income Tax Regs., establishes an automatic 4-month extension and sets forth the requirements for qualifying for such extension. An application for an automatic 4-month extension is to be made on a Form 4868. Sec. 1.6081-4(a)(2), Income Tax Regs. The regulations provide that: Such application for extension must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return. Sec. 1.6081-4(a)(4), Income Tax Regs.
Each of the Forms 4868 filed by petitioners in these cases contains the *628 following notation: File this form with the Internal Revenue Service Center where you must file your income tax return and pay the amount shown on line 6 below. This is not an extension of time for payment of tax. You will be charged a penalty for late payment of tax and late filing unless you show reasonable cause for not paying or filing on time (see instructions).
Section 1.6081-4(b), Income Tax Regs., provides that the granting of an automatic extension of time within which the taxpayer may file an income tax return does not operate to extend the time for payment of any tax due. Thus, even if an extension is granted under section 6081, a taxpayer must generally pay all taxes owed by the due date of the return, regardless of whether an extension of time to file a return is granted. Sec. 6151(a); Crocker v. Commissioner, 92 T.C. 899, 905-906 (1989); sec. 1.6081-4(a)(4), Income Tax Regs.[7] Although it would be unrealistic to expect the taxpayer to accurately estimate his tax liability when filing a Form 4868, the failure to make a good-faith attempt to estimate the tax liability may result in the Form 4868's being declared invalid. See *629 Crocker v. Commissioner, 92 T.C. 899 (1989). In filing a Form 4868, a taxpayer is to make a bona fide and reasonable estimate of tax liability based on the information available and pay that tax at the time of the filing of the Form 4868. Crocker v. Commissioner, supra at 908. After considering all the facts, we hold that the remittance made by petitioners with the 1986 Form 4868 was a payment of tax and not a deposit. This conclusion is based in part on the fact that Mr. Gabelman, when filing the Forms 4868, made a good faith attempt to calculate his tax liability. His calculation of the amounts to be remitted was more than an arbitrary guess at what amounts should be remitted. These calculations *630 differed substantially from the calculations made by the taxpayer in Risman v. Commissioner, 100 T.C. 191 (1993). A further fact on which we base our conclusion is that Mr. Gabelman did not attempt to designate the amounts remitted with the Forms 4868 as deposits until after he had received the notices of deficiency and was about to file the petitions in these cases. If a remittance with the application for extension of time to file their 1986 tax return was intended by petitioners to be a deposit, it should have been designated as a deposit at that time. Otherwise, the inference in these circumstances is that the amount was intended as a payment of the amount properly estimated as tax as required by respondent's regulations and the instructions on the Form 4868. If, in fact, no "proper estimate" was made, so that the remittance was not in fact a payment of the "properly estimated" tax, it is incumbent on the taxpayer to make such a showing. The facts here show that petitioners did make a "proper estimate" of their tax and remitted the amount of that estimate with their 1986 Form 4868. No mention of a "deposit" was made until after the receipt *631 by petitioners of the notice of deficiency and 1 day before the filing of the petitions in these cases. In Risman v. Commissioner, supra, we found that the amount sent in with the Form 4868 was treated by the IRS as a deposit and placed in a suspense account bearing no interest; no such showing is made in the instant case. Most of the cases dealing with payments made with requests for extensions of time to file returns have treated the remittance as a payment of tax even though there has been no specific issue in that respect in the case. Risman v. Commissioner, 100 T.C. at 200 n.4. Since the payment made with the 1986 Form 4868 was a payment of tax not made within 2 years of August 2, 1991, the date of the mailing of the notice of deficiency, it cannot be allowed as a credit or refund under section 6512(b)(3), since no return was filed by petitioners and none of the other provisions of section 6512(b)(3) are applicable. We hold that the remittance accompanying the 1986 Form 4868 was a payment of tax that is not eligible for refund or credit under section 6512(b)(3). Decisions will be entered under Rule 155 *632 . Footnotes
1. Cases of the following petitioners are consolidated herewith: John A. Gabelman, docket No. 25325-91 and John A. Gabelman, docket No. 25332-91.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue. Sec. 6512(b)(3), formerly sec. 6512(b)(2)↩, was redesignated by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6244(a), 102 Stat. 3750, effective for overpayments determined by the Tax Court which had not been refunded on the 90th day after Nov. 10, 1988. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.
1. 50 percent of the interest due on the full deficiency.↩
3. Respondent and petitioners have agreed that the amount of $ 4,857 by which petitioners' remittances for 1987 exceed their tax liability for that year is refundable to petitioners.↩
4. This agreement is conditioned upon the agreement of Mrs. Gabelman to the assessment of these amounts.↩
5. This amount was stipulated by the parties. No explanation was given as to why it is one dollar less than the amount shown on the 1986 Form 4868.↩
6. Sec. 6512. (b) Overpayment Determined by Tax Court. -- (1) Jurisdiction to Determine. -- Except as provided by paragraph (3) and by section 7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year or calendar quarter, of estate tax in respect of the taxable estate of the same decedent, or of tax imposed by chapter 41, 42, 43, or 44 with respect to any act (or failure to act) to which such petition relates for the same taxable period, in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. * * * (3) Limit on amount of credit or refund. -- No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid -- (A) after the mailing of the notice of deficiency, (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or (C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency -- (i) which had not been disallowed before that date, (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or (iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532↩.
7. See also United States v. Phillips, 843 F.2d 438, 442 (11th Cir. 1988); Burton v. Commissioner, T.C. Memo. 1991-12; Bacon v. Commissioner, T.C. Memo. 1989-90↩.